UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                         Case No. 15-mc-50226

v                                                Honorable Thomas L. Ludington

STEVEN INGERSOLL, et al.,

        Defendants.
_____/

## ORDER DENYING MOTION TO QUASH

Grand Traverse Academy, a non-party, filed a motion to quash a trial subpoena in the federal criminal case *United States v. Steven Ingersoll, et al.* (14-cr-20216). Grand Traverse Academy ("GTA") contends that the testimony of attorney Meg Hackett is privileged and cannot be elicited at trial.[1]

The communication at issue concerns inculpatory statements allegedly made by Steven Ingersoll on May 20, 2013. At a meeting with GTA's board and GTA's attorneys, Steven Ingersoll allegedly requested that GTA characterize payments made by GTA to SSM, a company owned by Steven Ingersoll, to avoid adverse tax reporting implications for SSM and Steven Ingersoll. Steven Ingersoll allegedly made these statements to GTA's board and attorneys, as well as GTA's independent auditor and GTA's superintendent.

---

[1] The motion to quash also seeks to quash "the government's use, reference to or admission of GTA's privileged communication dated May 30, 2013," which is a letter from GTA's law firm (the "Thrun Letter"). Since the filing of the motion, the Government has represented that it does not intend to offer the Thrun Letter into evidence. Accordingly, because there is no dispute regarding the Thrun Letter at this time, the motion to quash the Thrun Letter will be denied as moot.

# I

The Government seeks to have GTA's attorney, Meg Hackett, testify about Steven Ingersoll's alleged inculpatory statements. GTA, however, claims that Steven Ingersoll's statement is protected pursuant to the attorney-client privilege. Federal Rule of Evidence 501 governs testimonial privileges in federal criminal trials. Rule 501 provides, in pertinent part, that "the privilege of a witness . . . shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience." Fed. R. Evid. 501. The attorney-client privilege is intended to encourage full and open communication between clients and their attorneys. *Upjohn Co. v. United States*, 449 U.S. 383 (1981). "[T]he privilege exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice." *Upjohn*, 449 U.S. at 390. Because "it is in derogation of the search for truth, the privilege is narrowly construed, *United States v. Clem*, 210 F.3d 373, at*3 (6th Cir. 2000), and the "burden of establishing the existence of the privilege rests with the person asserting it." *In re Grand Jury Investigation No. 83-2-35*, 723 F.2d 447, 450 (6th Cir. 1983).

The Sixth Circuit has held that the following criteria must be satisfied in order to hold that a communication is protected under the attorney-client privilege:

> (1) Where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal advisor, (8) unless the protection is waived.

*Reed v. Baxter*, 134 F.3d 351, 355-56 (6th Cir. 1998) (citing *Fausek v. White*, 965 F.2d 126, 129 (6th Cir. 1992)).

Evaluating those factors reveals that the communication at issue here—the statements made by Steven Ingersoll—are not protected by the attorney-client privilege. First, in making the statements, Steven Ingersoll was not seeking legal advice. Instead, the statements request a certain characterization of payments so that Steven Ingersoll could avoid serious tax reporting implications. Nor were the statements made to Steven Ingersoll's legal advisor. Steven Ingersoll's statements were not "made in confidence" because there were several third-parties attending the meeting (either in person or via telephone); these individuals included an independent auditor, an SSM employee, and presumably, GTA board members. Indeed, unaddressed by the parties' papers is the suggestion that the meeting was necessary to resolve questions related to GTA's audit, a requirement of state law. Thus, Grand Traverse cannot invoke the attorney-client privilege to bar Meg Hackett from testifying about Steven Ingersoll's statements made at a GTA board meeting.

**II**

A brief note concerning the relevancy of Ms. Hackett's testimony is in order. The Bill of Particulars (ECF No. 61) clarified that the focus of Counts 6 and 7 of the Superseding Indictment were the payments in 2009 and 2010 from SSM and SSI to Steven Ingersoll, and *not* the payments from GTA to SSM & SSI. *See* ECF No. 74. Accordingly, the payments from GTA to SSM & SSI were logically irrelevant to those counts. The legal and business relationship between GTA and SSM and SSI remained relevant only to Count 1 and the Government's theory that the Defendants engaged in a conspiracy to commit bank fraud in order to assist Steven Ingersoll and SSM to repay the liability to GTA. Therefore, evidence of the fact of SSM and SSI's liability to GTA has been admitted. On the other hand, the Court has sought to limit introduction of evidence related to competing factual versions of how the liability developed and

who was responsible for the liability. *See* ECF No. 112 at 3 ("Thus, GTA's accounts receivable/prepaid balance has been consistently mischaracterized by the government as an overdraw by SSM when it actually represents SSM's willingness to support the Academy by rebating budget authorized earnings."). Unknown to the Court until the Thrun letter was revealed was that Steven Ingersoll may have in fact made statements or admissions directly related to his tax liability during the GTA board meeting and thus directly related to Counts 6 and 7. The Court therefore concludes that the testimony is relevant to Counts 6 and 7 and is also relevant to Steven Ingersoll's potential motive to engage in the conspiracy pleaded in Count 1.

Accordingly, it is **ORDERED** that Grand Traverse Academy's Motion to Quash (ECF No. 3) is **DENIED**. With respect to its request to quash the admission of the Thrun Letter, the motion is **DENIED AS MOOT**. With respect to its request to quash the testimonial subpoena served on Meg Hackett, the motion is **DENIED WITH PREJUDICE**.

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: March 2, 2015

---

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on March 2, 2015.

s/Suzanne M. Gammon
SUZANNE M. GAMMON

---